## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | NO. 14-50 |
| | : | |
| JUCONTEE THOMAS WOEWIYU | : | |

**May 21, 2018**                                                    **Anita B. Brody, J.**

### MEMORANDUM

The Government charges Defendant Jucontee Thomas Woewiyu with two counts of

fraudulently attempting to obtain citizenship, in violation of 18 U.S.C. § 1425; four counts of

fraud in immigration documents, in violation of 18 U.S.C. § 1546(a); three counts of false

statements in relation to naturalization, in violation of 18 U.S.C. § 1015(a); and seven counts of

perjury, in violation of 18 U.S.C. § 1621. These charges stem from Woewiyu's alleged

participation in a military organization committed to the violent overthrow of the Liberian

government, and the false information that Woewiyu subsequently provided about his

involvement in this organization in his application for United States citizenship.

On December 20, 2017, Woewiyu filed a motion to dismiss the indictment without

prejudice for a violation of the Speedy Trial Act. On January 31, 2018, the Court denied

Woewiyu's motion to dismiss. Woewiyu's trial is scheduled for June 11, 2018. The following is

an explanation of the Court's decision to deny Woewiyu's motion to dismiss the indictment

without prejudice for a violation of the Speedy Trial Act.

## I. BACKGROUND

### A. Factual Background

Since 1972, Woewiyu has had Legal Permanent Resident status in the United States. On

or about January 23, 2006, Woewiyu applied for United States citizenship by submitting an

Immigration and Naturalization ("INS") Form N-400. On January 30, 2014, a federal grand jury indicted Woewiyu for false answers that he provided on his Form N-400 and during his interview with an Immigration Services Officer.

Specifically, the indictment charges that Woewiyu, along with Charles Taylor and others, founded the National Patriotic Front of Liberia ("NPFL"), a military organization dedicated to the violent overthrow of the Liberian government that was led by Samuel Doe. Indictment ¶ 5, ECF No. 1. Woewiyu served as both the NPFL spokesman and the Minister of Defense. Indictment ¶ 7.

In September of 1990, Samuel Doe was captured, tortured, and executed. Indictment ¶ 8. The indictment further charges that after Doe's death, the NPFL continued "with a brutal campaign for control of the country," fighting against other factions. Indictment ¶ 9. "During defendant Woewiyu's tenure as NPFL Minister of Defense, the NPFL conducted a particularly heinous and brutal military campaign. It was characterized by the torture of perceived adversaries, the execution of civilians, the killing of . . . peacekeepers, the forced sexual slavery and rape of girls and women, the conscription of child soldiers, and the murder of humanitarian aid workers." Indictment ¶ 11.

The indictment further charges that when Woewiyu applied for U.S. citizenship in January of 2006, he made several misrepresentations on his Form N-400 and during his interview with an Immigration Services Officer, despite certifying under penalty of perjury that his answers were correct. Indictment ¶ 15. For instance, Question 10 asked "Have you **EVER** advocated (*either directly or indirectly*) the overthrow of any government by force or violence?" Indictment ¶ 17.b. Woewiyu responded no, even though he had advocated the overthrow of the Liberian government by force or violence when it was led by Samuel Doe. Indictment ¶ 17.b.

Additionally, Question 11 asked "Have you **EVER** persecuted (*either directly or indirectly*) any person because of race, religion, national origin, membership in a particular social group, or political opinion?" Indictment ¶ 17.c. Woewiyu responded no, even though, as a member of the NPFL, he had "persecuted others because of their political opinions, and membership in a particular social group." Indictment ¶ 17.c.

## B. Procedural Background

On May 12, 2014, the indictment against Woewiyu was unsealed. On May 13, 2014, Woewiyu made his initial appearance before a magistrate judge. On May 16, 2014, an arraignment and detention hearing was held. During the hearing, Woewiyu pleaded not guilty to all counts in the indictment and the magistrate judge ordered pretrial detention. On May 21, 2014, the Court scheduled Woewiyu's trial for July 7, 2014.

On June 12, 2014, the Government filed a motion to have the case declared complex and for a continuance of the trial date. On that same date, the Court granted the Government's motion and ordered an open-ended "ends of justice" continuance pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A) ("Open Ended "Ends of Justice" Continuance").[1] The Court granted the continuance on the basis of finding that the case was "so unusual and so complex due to the nature of the prosecution and the state of the evidence that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by the Speedy Trial Act, 18 U.S.C. § 3161 et. seq." Speedy Trial Act Order, ECF No. 13 ¶ 1. The Court determined the case was so unusual and complex because of: (1) novel issues in the case, involving conduct and events that occurred decades ago on another continent during a civil war, which would require review of complicated documentary evidence such as

---

[1] Section 3161(h)(7)(A) of the Speedy Trial Act provides that a judge may grant a continuance "on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

ancient documents and documentary evidence from foreign sources; (2) the Government's ongoing efforts to obtain testimony and recordings from foreign sources, including the Netherlands and the United Kingdom; and (3) the "voluminous and complicated" discovery that Defendant and his counsel would need time to review. Speedy Trial Act Order ¶ 3. As a result, the Court concluded that the ends of justice served by granting the continuance outweighed the best interests of the public and the defendant in a speedy trial. Speedy Trial Act Order 13 ¶ 5.

On September 17, 2014, Woewiyu filed a motion for pretrial release. On October 21, 2014, the Court held a hearing regarding Woewiyu's motion for pretrial release. During the hearing, defense counsel indicated that obtaining evidence in the case would "require requests that are going to take a long time to fill." Mot. Pretrial Release Hr'g Tr. 78:4-7 [hereinafter Release Hr'g Tr.]. Defense counsel argued that one factor to consider in determining whether to grant pretrial release for Woewiyu was that "[t]his case is going to take a long time to get to trial." Release Hr'g Tr. 109:24-25. Defense counsel's statement prompted the Court to ask the Government how soon it would be ready for trial. Release Hr'g Tr. 110:2-4. The Government answered, "I would hope to try it, Your Honor, early in 2015." Release Hr'g Tr. 110:5-6. Defense counsel responded, "I don't see that as remotely possible, Your Honor." Release Hr'g Tr. 110:8-9. Defense counsel explained: "I know I am going to have requests that are going to take time because I suspect I'm going to be requesting classification information and – classified information and that's – that's going to take some period of time." Release Hr'g Tr. 110:20-24. Relying on the Government's motion to have the case declared complex and for a continuance of the trial date, and the Court's decision to grant the Government's motion to continue the trial,

4

defense counsel argued that the case could not be tried for a long time because "there's still going to be lots of discovery."[2] Release Hr'g Tr. 111:14-21.

On October 22, 2014, the Court granted Woewiyu's motion for pretrial release.[3] ECF No. 30. No new trial date was set as a result of the pretrial release hearing. Rather, defense counsel's representation at the hearing that he suspected he was going to request classified information triggered the Government's obligations under the Classified Information Procedures Act ("CIPA"). Linwood C. Wright Aff. ¶ 2, ECF No. 76 [hereinafter Wright Aff.].

Accordingly, on December 11, 2014, Linwood C. Wright, the Assistant United States Attorney assigned to prosecute Woewiyu's case, "requested that the Department of Justice's National Security Division (NSD) ask another government entity to conduct a prudential search request, in order to determine whether the entity possessed classified documents relating to [Woewiyu]." Wright Aff. ¶ 2. On January 15, 2015, following the NSD's request, the "entity retrieved documents that were responsive to the prudential search request." Wright Aff. ¶ 2.

In order to review the classified documents, Wright needed to obtain additional security clearance. On February 24, 2015, Wright was granted an additional clearance. Wright Aff. ¶ 3. Wright then coordinated with the government entity to review the classified documents. Wright Aff. ¶ 4. "[Wright] was granted permission to review those documents on convenient dates specified by the government entity, at the entity's facility." Wright Aff. ¶ 4. Wright reviewed

---

[2] Specifically, Woewiyu's counsel argued that "there's still going to be lots of discovery—the Government has said that in their [continuance] motion." Release Hr'g Tr. 111:14-16. The Court then pointed out that the Government said it would be ready for trial in early 2015, and defense counsel responded, "Well, Your Honor, that's not what they said in their [continuance] motion that they filed some time ago, which Your Honor Granted." Release Hr'g Tr. 111:19-21.

[3] Woewiyu has remained on pretrial release since that date. Throughout the pretrial period, the Court has made several unopposed modifications to Woewiyu's pretrial release. *See* ECF Nos. 30, 37, 40, 42, 47. For instance, the Court originally imposed total home confinement and restricted Woewiyu's travel to the Eastern District of Pennsylvania ("District"); the Court then reduced the hours of Woewiyu's home confinement; and eventually, the Court terminated Woewiyu's home confinement and modified the travel restriction to permit travel outside of the District with prior permission. *See* ECF Nos. 30, 37, 40, 47.

documents on eight days during the months of July through September 2015. As a result of his review, Wright made "numerous classified notes." Wright Aff. ¶ 4.

On December 10, 2015, the government entity that possessed the classified documents, reviewed Wright's classified notes, redacted portions of them, and then transmitted them to NSD. Wright Aff. ¶ 5. On May 17, 2016, NSD transmitted Wright's classified notes to the Federal Bureau of Investigation ("FBI") in Philadelphia and they were stored in the FBI's Sensitive Compartmented Information Facility. Wright Aff. ¶ 5.

During his request and review of classified documents, Wright did not file any motions informing the Court of his investigation into classified documents related to Woewiyu. Notwithstanding his failure to file any motions, however, Wright kept the Court informed of the classified status of the case and his ongoing efforts to obtain and review documents.

Between December 12, 2014 and June 10, 2016, Wright engaged in multiple phone conversations with Criminal Deputy Clerk James Scheidt.[4] During these conversations, Wright informed Scheidt of his ongoing investigation into classified documents related to Woewiyu, and the strong likelihood that once he completed his review the Court would need to conduct its own review of these classified documents. Scheidt relayed the content of these conversations to the Court, keeping the Court apprised of the classified nature of the case and the complex and complicated discovery process.

On June 22, 2016, the Government filed both an Unopposed Motion to Designate a Classified Information Security Officer and a Motion for a Pretrial Conference Pursuant to the

---

[4] James Scheidt is the clerk exclusively assigned to me. The conversations between Wright and Scheidt occurred on December 12, 2014, December 16, 2014, April 21, 2015, October 27, 2015, and June 10, 2016. Woewiyu's case was the topic of all conversations as it was Wright's only case before me during this time period. Call logs from Wright's direct phone number and Scheidt's direct phone number reflect the exact dates and times of these conversations. The call logs are filed under seal as Attachment A to this Memorandum.

6

Classified Information Procedures Act.[5] ECF Nos. 44, 45. Following the Government's filing of formal CIPA motions, the Court began the arduous task of reviewing classified information, which first required several staff members to obtain security clearance and then required review of all materials in a Sensitive Compartmented Information Facility.

On June 28, 2016, the Court granted the Government's Unopposed Motion to Designate a Classified Information Security Officer and designated a classified information security officer. ECF No. 48. On March 2, 2017, the Court granted the Government's Motion for a Pretrial Conference Pursuant to the Classified Information Procedures Act. ECF No. 49.

On April 4, 2017, Woewiyu filed a Motion in Opposition to Bifurcated CIPA § 2 Conference that the Court denied on April 10, 2017. ECF Nos. 51, 52.

From April 12, 2017 through July 17, 2017, the parties filed three CIPA § 4 motions. On April 12, 2017, Woewiyu filed a Motion to Compel Discovery of CIPA § 4 Material. ECF No. 53. On June 30, 2017, the Government filed an ex parte motion under CIPA § 4. *See* ECF No. 72. On July 17, 2017, Woewiyu filed a Reply Motion to Compel Discovery of CIPA § 4 Material. ECF No. 57.

On November 30, 2017, the Court became confident that its review of the classified information was almost complete and, prior to ruling on the three pending CIPA § 4 motions, the

---

[5] Between June 12, 2014, when the Court granted the Government's motion to have the case declared complex and for a continuance of the trial date, and June 22, 2016, when the Government filed its first CIPA motions, Woewiyu filed six motions in addition to his motion for pre-trial release. On July 2, 2014, Woewiyu filed a Motion for Copies, which the Court granted on August 25, 2014. ECF Nos. 15, 18. On July 2, 2014, Woewiyu also filed a Motion to Proceed Pro Se and for Standby Counsel, which he later withdrew on October 1, 2014. ECF Nos. 14, 29. On November 26, 2014, Woewiyu filed a Motion to Amend the Release Order, which the Court granted on November 26, 2014. ECF Nos. 34, 37. On October 7, 2015 Woewiyu filed a Motion for Modification of Conditions of Pretrial Release, which the Court granted on October 8, 2015. ECF Nos. 38, 40. On December 15, 2015, Woewiyu filed an Unopposed Motion for Temporary Modification of Conditions of Pretrial Release, which the Court granted on December 16, 2015. ECF Nos. 41, 42. On June 21, 2016, Woewiyu filed a Second Motion for Modification of Conditions of Pretrial Release, which the Court granted on June 28, 2016. ECF Nos. 43, 47.

Court scheduled Woewiyu's trial for February 26, 2018. ECF No. 59. On December 20, 2017, Woewiyu filed a Motion to Dismiss for a Violation of the Speedy Trial Act. ECF No. 63. On January 11, 2018, the Government filed its First Motion In Limine.[6] ECF No. 68.

On January 23, 2018, the Court held a hearing on Woewiyu's Motion to Dismiss for a Violation of the Speedy Trial Act. On the same date, the Court ruled on the parties' three pending CIPA § 4 motions, denying Woewiyu's motions, and granting the Government's motion.[7] ECF No. 74. On January 31, 2018, during a telephone conference on the record, the Court denied Woewiyu's Motion to Dismiss for a Violation of the Speedy Trial Act, and assured the parties' that an explanation of the denial would follow at a later date. *See* ECF No. 78.

On February 6, 2018, Woewiyu filed a motion for an "ends of justice" continuance of the trial date pursuant to 18 U.S.C. § 3161(h)(7)(A), (B). ECF No. 80. On February 14, 2018, the Court held a hearing on Woewiyu's motion to continue the trial.[8] During the hearing, the Court granted Woewiyu's motion for an "ends of justice" continuance pursuant to 18 U.S.C. § 3161(h)(7)(A), (B)[9] and scheduled the trial for June 11, 2018. *See* ECF No. 85. Accordingly, Woewiyu's trial is scheduled for June 11, 2018.

---

[6] Since then, the parties have filed seven additional motions in limine that are pending.

[7] On January 30, 2018, the Government filed a Second Motion to have Case Declared Complex and for a Continuance of the Trial Date. ECF No. 77. On January 31, 2018, the Court denied the Government's motion. ECF No. 78.

[8] At the hearing, defense counsel acknowledged that if the continuance was granted, then the entire time period from February 6, 2018 until the date of trial would be excludable delay under the Speedy Trial Act.

[9] On February 14, 2018, the Court concluded that the ends of justice served by granting the requested continuance outweighed the best interests of the public and Defendant in a speedy trial based on the following findings: (1) On February 1 and 2, 2018, the Government provided approximately 3,000 pages of discovery material and Jencks material to defense counsel; (2) Defense counsel had exercised due diligence, but reasonably needed more time to digest this recently produced discovery and to determine what materials would be the subjects of motions *in limine*; (3) Based on recently filed reports, defense counsel reasonably needed more time to attempt follow-up interviews of some individuals whom the Government had interviewed; and (4) Woewiyu consented to defense counsel's request for a continuance.

8

## II. DISCUSSION

Woewiyu contends that the Court's Open-Ended "Ends of Justice" Continuance violated the Speedy Trial Act because it was unreasonable in length. In order to determine whether a violation of the Speedy Trial Act occurred, the Court must begin by calculating the periods of delay that must be counted towards the seventy-day time limit imposed by the Speedy Trial Act. If the Court makes an initial determination that trial will occur within the seventy-day time limit, then the Court must examine whether the Open-Ended "Ends of Justice" Continuance was reasonable in length. Only after it determines that the "Ends of Justice" Continuance was reasonable in length can the Court make a final determination that no Speedy Trial Act violation has occurred.

### A. Speedy Trial Act Calculation[10]

The Speedy Trial Act requires:

In any case in which a plea of not guilty is entered, the *trial of a defendant* charged in an information or indictment with the commission of an offense *shall commence within seventy days* from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. . . .

18 U.S.C. § 3161(c)(1) (emphasis added). Section 3161 also provides that certain "periods of delay shall be excluded . . . in computing the time within which the trial of any such offense must commence." *Id.* § 3161(h).[11] "In ruling on a defendant's motion to dismiss, the court must tally the unexcluded days. This, in turn, requires identifying the excluded days." *Zedner v. United States*, 547 U.S. 489, 507 (2006).

---

[10] This section only addresses motions that are necessary to calculate excludable and unexcludable delay for purposes of the Speedy Trial Act.

[11] If the trial does not commence within seventy days, as extended by § 3161(h), then the information or indictment must be dismissed on motion of the defendant, with or without prejudice. 18 U.S.C. § 3162(a)(2).

### 1. Calculation of Excludable and Unexcludable Delay

Any period of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excluded in computing the seventy-day time limit.[12] *Id.* § 3161(h)(1)(D). "[B]oth the date on which . . . a motion is filed and the date on which the court disposes of a motion are excluded." *United States v. Lattany*, 982 F.2d 866, 872 n.6 (3d Cir. 1992). Also excluded from the calculation is any period of delay resulting from an "ends of justice" continuance, which the Speedy Trial Act defines as:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. . . .

18 U.S.C. § 3161(h)(7)(A). In order for the requirements of the Speedy Trial Act to be met in this case, both delays caused by the parties' pretrial motions and delays caused by the "ends of justice" continuances must be properly excludable from the seventy-day time limit. Accordingly, the Court conducts the following calculation of excludable and unexcludable delay in this case beginning with Woewiyu's initial appearance before a magistrate judge and ending on the date of his trial.

On May 13, 2014, Woewiyu made his initial appearance before a magistrate judge, and the speedy trial clock began to run from that date. On June 12, 2014, the Government filed its motion to have the case declared complex and for a continuance of the trial date, which tolled the speedy trial clock. Therefore, from May 13, 2014 through June 12, 2014, twenty-nine unexcludable days had run against the Speedy Trial Act's seventy-day limit.

---

[12] "Motions regarding the defendant's pretrial detention and bond are 'pretrial motions' for speedy trial purposes and thus excludable from the speedy trial calculation." *United States v. Lattany*, 982 F.2d 866, 872 n.6 (3d Cir. 1992).

On June 12, 2014, the Court granted the Government's motion and ordered an open-ended "ends of justice" continuance pursuant to 18 U.S.C. § 3161(h)(7)(A) ("Open-Ended "Ends of Justice" Continuance") that tolled the speedy trial clock. On June 22, 2016, the Government filed a Motion for a Pretrial Conference Pursuant to the Classified Information Procedures Act. Therefore, from June 12, 2014 through June 22, 2016, the Open-Ended "Ends of Justice" Continuance tolled the speedy trial clock and this entire time period is excludable delay.[13]

On June 22, 2016, the Government's filing of a Motion for a Pretrial Conference Pursuant to the Classified Information Procedures Act provided a new basis to continue tolling the speedy trial clock and supplanted the Open-Ended "Ends of Justice" Continuance. On March 2, 2017, the Court resolved the motion for a pretrial conference. Therefore, the period from June 22, 2016 through March 2, 2017 is excludable delay attributable to the pending motion for pretrial conference.

On March 3, 2017, the speedy trial clock began to run again because no motions were pending. On April 4, 2017, Woewiyu filed a Motion in Opposition to Bifurcated CIPA § 2 Conference, which tolled the speedy trial clock. Therefore, from March 3, 2017 until April 4, 2017, an additional thirty-two days had run on the speedy trial clock, for a total of sixty-one unexcludable days.

On April 10, 2014, the Court denied Woewiyu's Motion in Opposition to Bifurcated CIPA § 2 Conference. Because Woewiyu's opposition motion was pending from April 4, 2017 through April 10, 2017, that period of time is excludable delay.

---

[13] During this time period, Woewiyu filed six additional motions that also served to toll the speedy trial clock for some time. *See supra* note 4. Without reliance on the Open-Ended "Ends of Justice" Continuance, however, these motions did not toll a significant enough amount of time to avoid a Speedy Trial Act violation.

On April 11, 2017, the speedy trial clock began to run again because no motions were pending. On April 12, 2017, Woewiyu filed a Motion to Compel Discovery of CIPA § 4 Material, which tolled the speedy trial clock. Therefore, from April 11, 2017 until April 12, 2017, one additional day had run on the speedy trial clock, for a total of sixty-two unexcludable days.

On January 11, 2018, while the speedy trial clock was tolled because of Woewiyu's pending Motion to Compel Discovery of CIPA § 4 Material, the Government filed its First Motion in Limine. Although the Court denied Woewiyu's motion to compel on January 23, 2018, the Court has not yet ruled on the Government's First Motion in Limine, which continues to toll the speedy trial clock and is excludable time.

In addition, on February 6, 2018, Woewiyu filed a motion for an "ends of justice" continuance pursuant to 18 U.S.C. § 3161(h)(7)(A) to continue the February 26, 2018 trial date. On February 14, 2018, the Court granted Woewiyu's motion for an "ends of justice" continuance, and rescheduled the trial for June 11, 2018. Defense counsel concedes that this "ends of justice" continuance tolls the speedy trial clock.[14] Thus, even if the Court rules on the Government's First Motion in Limine before trial on June 11, 2018, the entire period before trial is excludable delay.

Accordingly, no violation of Speedy Trial Act's seventy-day time limit occurred if the Open-Ended "Ends of Justice" Continuance was reasonable in length, because the total unexcludable delay was only sixty-two days.

---

[14] The period from February 6, 2018 until February 14, 2018 is excludable because Woewiyu's motion to continue trial was pending during this period. From February 14, 2018 until trial is excludable because of the Court's grant of an "ends of justice" continuance. The Court properly concluded that it was necessary to grant Woewiyu's continuance because "the failure to grant such a continuance . . . would deny counsel for the defendant . . . the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(iv).

**2. Reasonableness of the Length of the Open-Ended "Ends of Justice" Continuance**

Whether a Speedy Trial Act violation occurred depends entirely on whether the Open-Ended "Ends of Justice" Continuance from June 12, 2014 until June 22, 2016 was reasonable in length. Woewiyu contends that the Open-Ended "Ends of Justice" Continuance was not reasonable in length and that by the time the Government filed its first CIPA motions on June 22, 2016 the speedy trial clock had far exceeded the seventy-day time limit and a violation of the Speedy Trial Act had occurred.[15]

Under the Speedy Trial Act, an open-ended continuance—a continuance granted for an open-ended period of time—is permissible as long as it is reasonable in length "under the particular circumstance of th[e] case." *Lattany*, 982 F.2d at 882. In this case, the Court granted the Open-Ended "Ends of Justice" Continuance because the "ends of justice served by taking such action outweigh[ed] the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Thus, whether the Open-Ended "Ends of Justice" Continuance was reasonable depends on whether the "ends of justice" in this case justified a continuance of such length.

In determining whether to grant an "ends-of-justice" continuance, a court must consider:

Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

---

[15] Woewiyu argues that the Open-Ended "Ends of Justice" Continuance violated the Speedy Trial Act because of "inaction that transpired between December 17, 2014 and October 7, 2015; October 8, 2015, and December 15, 2015; and December 16, 2015, and June 21, 2016." Mot. Dismiss ¶ 8, ECF No. 63. Despite Woewiyu's temporally limited objection to the Open-Ended "Ends of Justice" Continuance, the Court must examine the reasonableness of the entire length of the continuance in order to accurately determine whether this time period is properly excludable and conforms with the Court's Speedy Trial Act Calculation. *See Zedner*, 547 U.S. at 507 ("In ruling on a defendant's motion to dismiss, the court must tally the unexcluded days. This, in turn, requires identifying the excluded days.").

18 U.S.C. § 3161(h)(7)(B)(ii). Accordingly, "[u]nusual discovery-related issues provide a ground under the Speedy Trial Act for granting a continuance that is sufficiently long to allow the parties to prepare adequately for trial." *United States v. Groff*, No. 05-1634, 2006 WL 952226, at *3 (3d Cir. Apr. 13, 2006).

An additional important consideration in assessing whether the length of an open-ended continuance is reasonable is whether a district court "is attempting to accommodate the defense as well as the government." *Groff*, 2006 WL 952226, at *3 (citing *Lattany*, 982 F.2d at 883). "Defendants cannot be wholly free to abuse the system by requesting ["ends of justice"] continuances and then argue that their convictions should be vacated because the continuances they acquiesced in were granted." *Lattany*, 982 F.2d at 883. In *Lattany*, the Third Circuit held that a fourteen month open-ended "ends of justice" continuance was reasonable after "review of the record convinced [the court] that [the defendant] desired all continuances that were granted. That circumstance inform[ed] [the court's] decision." *Lattany*, 982 F.2d at 876 n.14; *see also United States v. Green*, 516 F. App'x 113, 123 (3d Cir. 2013) (holding that the district court's grant of a sixteen month open-ended "ends of justice" continuance "was not an abuse of discretion because the District Court was aware that [the defendant's] attorney needed more time to prepare and the Court noted that the parties were engaged in settlement negotiations."); *Groff*, 2006 WL 95226, at *3 (holding that the district court did not abuse its discretion in granting an open-ended "ends of justice" continuance "from September 25, 2000, until May 6, 2002, with subsequent continuances delaying the actual trial date until January 5, 2004" where the parties jointly requested the continuance to conduct voluminous and complicated discovery.).

Signs that a defendant desires a continuance may include a defendant's acquiescence to, or a request for, a continuance or a defendant's failure to inform the court that s/he is ready to

proceed with the case. *See Green*, 516 F. App'x at 122-23; *Lattany*, 982 F.2d at 875-76, 876 n.14. Furthermore, a defendant's prolonged delay in moving to dismiss the indictment for violation of the Speedy Trial Act may also indicate a defendant's agreement with a continuance. *See United States v. Sabino*, 274 F.3d 1053, 1064 (6th Cir. 2001), *opinion amended on other grounds*, 307 F.3d 446 (6th Cir. 2002) ("[T]he Stewarts waited to bring a motion to dismiss the indictment over a year after the date on which they contend the [speedy trial] clock commenced. The Stewarts' tardiness reflects their agreement with the district court's calendar for bringing the case to trial.").

On June 12, 2014, the Court determined that the case was unusual and complex because of the nature of the prosecution and novel issues in the case, such as conduct and events that occurred decades ago on another continent during a civil war and efforts to obtain testimony and recordings from foreign sources, that would require the review of complicated documentary evidence and involve voluminous and complicated discovery. No one disputes that this case is complex. Mot. Dismiss Hr'g Tr. 3:7-12. At the time the Government filed the motion to have the case declared complex and for a continuance, "there was no opposition filed . . . and certainly [defense counsel] never challenged that afterwards." Mot. Dismiss Hr'g Tr. 3:11-12. Woewiyu does not challenge the Court's decision to grant the continuance; he only disputes whether the length of the Open-Ended "Ends of Justice" Continuance was reasonable. Because this case is so unusual and complex, and Woewiyu desired the continuance, the Open-Ended "Ends of Justice" Continuance was reasonable in length.

Although Woewiyu now challenges the length of the continuance, when the Court held a hearing regarding Woewiyu's motion for pretrial release on October 21, 2014, defense counsel took the opportunity to argue for an even longer continuance than was desired by the

15

Government. At the hearing, the Government expressed a desire to try the case early in 2015, but defense counsel responded, "I don't see that as remotely possible, Your Honor." Release Hr'g Tr. 110:8-9. Defense counsel then informed the Court and the Government that he suspected he would request classified information, which would take time to resolve. Relying on the Government's motion for a continuance of the trial date, and the Court's decision to grant the motion, defense counsel argued that the case could not be tried for a long time because "there's still going to be lots of discovery." Release Hr'g Tr. 111:14-21.

Defense counsel's mention of classified information triggered the Government's obligations under CIPA. Accordingly, on December 11, 2014, Wright "requested that the Department of Justice's National Security Division (NSD) ask another government entity to conduct a prudential search request, in order to determine whether the entity possessed classified documents relating to [Woewiyu]." Wright Aff. ¶ 2. From December 2014 until June 22, 2016, when the Government filed both an Unopposed Motion to Designate a Classified Information Security Officer and a Motion for a Pretrial Conference Pursuant to the Classified Information Procedures Act, Wright engaged in the arduous task of investigating classified documents related to Woewiyu. This investigation required Wright to obtain additional security clearance, visit another government entity's facility on multiple occasions—at the convenience of the facility— to review classified information, and generate numerous classified notes. Throughout this process, Wright kept the Court informed of his ongoing review of classified documents related to Woewiyu, and the strong likelihood that once he completed his review the Court would need to conduct its own review of these classified documents.

Although the case was already quite complex before the introduction of classified information, the influx of highly confidential materials that required intensive investigation and

review, affirmed the Court's finding that the case involved truly novel issues. Additionally, it bolstered the Court's determination that the nature of the prosecution would require the review of complicated documentary evidence and involve voluminous and complicated discovery. Based on the Government's arduous investigation into classified information, and the strong likelihood that the Court would need to conduct an independent review of the classified documents, the Court realized that the Open-Ended "Ends of Justice" Continuance would have to be quite lengthy.

Following the Government's filing of formal CIPA motions on June 22, 2016, the Court began its own arduous review of classified information, which required several staff members to obtain security clearance and review of all materials in a Sensitive Compartmented Information Facility. On November 30, 2017, the Court became confident that its review of the classified information was almost complete and scheduled Woewiyu's trial for February 26, 2018. The trial was further delayed until June 11, 2018 due to defense counsel's motion for a new "ends of justice" continuance that the Court granted.

Although the alleged Speedy Trial Act violation had concluded by June 22, 2016, defense counsel waited until December 20, 2017 to file a motion to dismiss the indictment without prejudice for a violation of the Speedy Trial Act—a year and a half after the alleged violation had concluded. Additionally, defense counsel never requested a trial date at any point. Moreover, as previously discussed, defense counsel never opposed the Open-Ended "Ends of Justice" Continuance and even advocated for a longer continuance than the Government desired. Defense counsel's actions strongly indicate that Woewiyu desired the Open-Ended "Ends of Justice" Continuance.

The nature of the prosecution and the novel issues in this case, including the need for the Government and the Court to engage in an arduous review of classified documents, as well as the Government's need to obtain foreign discovery, justify the length of the Open-Ended "Ends of Justice" Continuance. In delaying the trial, the Court sought to accommodate both the Government and the defense. Based on the circumstances of the case—the nature of the prosecution and the novel issues involved combined with Woewiyu's consent to continue the trial—the Open-Ended "Ends of Justice" Continuance was reasonable in length. Because the Open-Ended "Ends of Justice" Continuance was reasonable in length, the total unexcludable delay was only sixty-two days. Therefore, no violation of the Speedy Trial Act's seventy-day limit occurred.

## III. CONCLUSION

For the reasons set forth above, I denied Woewiyu's motion to dismiss the indictment without prejudice for a violation of the Speedy Trial Act.

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:

O:\ABB 2018\L-Z\USA v. Woewiyu Speedy Trial Memorandum.docx

18